United States of America v. Dianne Kennedy Ms. Gerlach, you were there so quickly I thought you had everything all arranged. Not quite. Thank you for your indulgence. May it please the court, I am Karen Sirianni Gerlach. I am the attorney for the appellant Dianne Kennedy and I would ask the court's permission to reserve three minutes of rebuttal time. That request will be granted. Thank you your honor. The district court denied Ms. Kennedy's request for a downward variance on the ground that the facts and circumstances supporting her request were not exceptional. For two reasons this ruling was an abuse of discretion and unreasonable. First, the district court confused the standard for a variance with the standard for a departure and thus erroneously applied pre-Booker sentencing law. Second, what the district court did was a categorical refusal to consider family circumstances rather than the kind of individualized exercise of discretion which 3553A requires. When the district court denied the variance in its tentative findings at appendix pages 7 and 8, the district court cited a departure guideline, it cited departure case law, and it used the departure terminology of outside the heartland. The district court clearly confused the standard for a variance with the standard for a departure. Weren't you asking for a departure? We asked for both your honor. Okay and wasn't didn't the court use the appropriate language in making a determination as to whether the departure should be granted? Excuse me, it did use the correct standard for departure but it did not use the correct standard for a variance and effectively collapsed them together and did not distinguish between the two. But as we know from this court's teachings in Vampire Nation and the Osborne decisions, they are distinctly different and separate and there are different criteria which apply in governing a request for departure and a request for a variance. Wasn't the word exceptional though used only in one part as it dealt with departure? Yes, but if you go on... You're trying to hold the court accountable for the use of that word when you argue whether or not the word you might be correct, your honor. But as I was about to say, after the district court used that word exceptional in its tentative findings, defense counsel came back at the sentencing hearing and twice at appendix pages 98 and 114 specifically noted the variance standard, how it was different, and that the district court was ignoring it and not applying it. In response, the district court basically ignored those objections, did not address the argument, and did nothing to refute the conclusion that it was applying the departure standard and requiring exceptional circumstances to support a variance, which as we know from Gall is not the standard which is applicable. Which page did you say the court did that on? 98 and 114. The first time that defense counsel objects, the district court changes the subject and says what about the criminal history category. Okay, so the court didn't say anything there. No, it didn't. So at best the record is ambiguous. That's the very best that we can say about this. I would say silent as opposed to ambiguous. So it does not, because it is silent, it does not refute the conclusion that the wrong standard was applied. But you want to pull a word out that was used in another sentence and attribute it on this page. I don't see how you can do that. I'm not just looking at that. I am looking at the fact that first the district court used the word exceptional. Defense counsel responded by not necessarily focusing on the word exceptional, but focusing on the standard and explaining the 3553A analysis, which is an individualized exercise of discretion. Defense counsel very explicitly on appendix pages 98 and 114 lays out that standard and the district court never acknowledges it. Furthermore, the use of the word exceptional might not have been so egregious or reversible had the district court used that word in the context of a legitimate 3553A analysis where the district court gave meaningful consideration as the case law requires and really got into the meat and potatoes of these family circumstances and explained why they should or should not be the basis of a variance. Instead of reflecting that individualized analysis, the district court instead did a categorical rejection of family circumstances as ever being the basis of a variance when the district court said on appendix pages 107 and 109 that families of defendants are always affected. In other words, this can't be the basis of a variance. It's always out there and it's not something to be taken lightly. Family circumstances constitute the history and characteristics of the defendant, the first and one of the required factors which 3553A requires to be considered in our post-court sentencing case law. Why don't you address the number of victim enhancement issues? The number of victim enhancement, as I pointed out in my brief, there were really only two victims in this case because no one other than Ursuline Services or the insurance carrier actually suffered any harm or loss. So there were not more than 10 victims. There were only two. So for you there's no temporal, in your argument, there's no temporal I know some of the cases seem to distinguish between an immediate reimbursement versus later. For you, as long as at some point they're reimbursed, the person can't be a victim? Yes, because it's not even that it wasn't temporal with the people who were the account holders. The reality was those people were never out of pocket and never suffered any loss. But their account had to be, their account had to have suffered. But there is no evidence, excuse me your honor, there's no evidence that Ursuline left them in the lurch or that there was ever a gap where they needed money and didn't get that. The government never presented any evidence. There's nothing of record to support that. They were lucky enough to have insurance in a company that would be able to kick back in and make sure they were full. To borrow a phrase from tort law, you take the victim as you find them. And the victim here were the people who could reimburse the account holders. So yes, I think that there was never any loss, immediate, temporary, or in any sense to the account holders. Doesn't the plain language of the commentary go your way as well? Because it talks about any person who sustained, past tense, any part of the actual loss. And then actual loss is defined as the pecuniary harm that resulted from the offense. That seems to tell us to stop the clock at the end of the calculus rather than earlier. Yes, absolutely your honor. And what weight are we to give to that comment? Are we supposed to follow that comment with the same weight that we would follow a statutory? It's advisory, and if there's an ambiguity, it clarifies it. And I think that there is an ambiguity in some sense in that, you know, did the account holders actually sustain loss and were they victims? And this clarifies that. So it does resolve the ambiguity and resolves the issue. So the individuals, I guess at some point you could say they suffered a pecuniary actual loss, but that was reimbursed, although not immediately, right? The record is not very well developed on this, to be frank. And there is nothing in the record that indicates that these people ever tried to incur an expense or make a purchase or pay a bill and were left without that. So based on the record we have. Well, in terms of the reimbursement, I mean, that wasn't immediate, right? I mean, it had to have been. In some cases it is immediate. No one would ever know that there was a loss, really. But in this case it had to be discovered and remedied, I suppose, right? Again, that's not a record. The record is not very well developed on this. So I can only make assumptions based on the fact that defense counsel argued that the victims were never out of pocket and the government didn't refute that. There seems to be a split in the circuits as to how to interpret this question. Do you agree with that? I'm not sure about that, Your Honor. I could address that in a supplementary brief if you would like. The second and the fifth circuit. This summer there were a few cases. Would you like a supplemental letter brief on that? Not necessarily. Okay. You don't acknowledge such a split? I'm unaware of it, Your Honor. I don't deny that it exists. All right. Anything else? In summary, under the post-Booker sentencing analysis, we must first determine if there's procedural error and then look at substantive unreasonableness. If this court finds that one or any of the enhancements were improperly applied and the guidelines were incorrectly calculated and procedural error occurs and the sentence must be vacated, if this court agrees with the enhancements, then we're into a consideration of substantive reasonableness. Substantive reasonableness is determined based on whether there was abusive discretion. The district court did abuse its discretion when it applied the wrong standard for the 3553 analysis. It made a mistake of law by requiring that family circumstances can only support a variance when they are exceptional or extraordinary, and either way the sentence is unreasonable and must be vacated. Also, if I may just add quickly, the three guideline enhancements, if the court were to strike all three, that makes Ms. Kennedy's guideline range 8 to 14 months. She did begin to serve her term, she self-reported, in March of 2008. So if there is any chance of any of these sentencing issues being the basis of relief, then I would ask that bond pending appeal be granted. It was applied for in the district court and denied. Have you filed a motion here? I have not, Your Honor, not a written motion. I don't know that we can consider it without such. Our office has had that happen before. We have made oral motions to the bench and have them granted. But if the court would prefer, I would be happy to follow up with a written motion. Perhaps you should do that. Thank you, Your Honor. Mr. Eberhardt. May it please the court. Robert Eberhardt, Assistant United States Attorney on behalf of the Appellee United States. The record reflects that counsel for Diane Kennedy requested a variance and a departure. The district court analyzed that in filing its tentative findings. Normal procedure was followed by the district court in making that analysis. And the statement that is being argued before this court as having reflected a use of the word exceptional was made in the context of those tentative findings. And specifically, the district court recognized its authority to nevertheless grant a departure on the basis of exceptional circumstances, family circumstances. When the issue was raised in the pre-sentencing process, the district court made it clear that it would go on to consider the 3553A factors at the time of sentencing. So the context in which the terminology not so exceptional is made by the district court has to be viewed in the context of the entire record, both in terms of the fact that counsel was requesting both a departure and a variance when the words were used by the district court in its tentative findings. And the record reflects clearly that the district court did consider family circumstances and reflected on those family circumstances under the 3553A factor analysis. Page 109 of the appendix reflects the court having stated that it recognizes your grandchildren and your mother are dependent upon you. Families are impacted when a family member decides to commit an offense. The criminal conduct in this case constituted an abuse of the position of trust, showed a remarkable disregard for vulnerable persons, a person whose government benefits were entrusted to your care. The court earlier had reflected on the fact that family circumstances were unusual, but not so exceptional as to require a variance. In fact, in Gall, Justice Stevens reflects upon not only the appellate standard for review, but reflects upon what a district court is to do in examining a request for a variance. And he uses the terminology justification sufficiently compelling to support a degree of variance. I think the terminology issue is sort of a red herring here because in reality the issue is whether or not the district court considered family circumstances in examining the request for both a departure and a variance. Of course, the issue being raised here is with regard to the variance. And the language that the district court used, I suggest, not so exceptional, is not inconsistent with Justice Stevens' terminology sufficiently compelling. I think either terminology reflects the fact that the district court is exercising its discretion. And its discretion is based upon a determination of what the court finds to be a reasonable sentence for the particular case before the court. Mr. Eberhardt, may I ask a question about the number of victims? Sure. It seems to me, as I indicated to opposing counsel, that the language of the comment goes against you on that. I mean, it talks about a victim defined as someone who sustained a loss. If someone through credit card fraud gets access to my bank account, as we're sitting here today and my account goes from $2,000 to $1,000, and tomorrow morning I get a call from PNC Bank telling me that this happened and telling me that the account has been replenished with interest, how can I be deemed a victim under that definition? I think if it's immediately replenished, that's certainly an issue. But there's no indication that that happened here. Even within three months, say, if I don't have any bounced checks, if I don't suffer any pecuniary harm, obviously I've been violated, I'm angry and upset, et cetera, but under the definition of victim, I guess let me go forward. The thing that I find curious about this case is it seems to me that the guideline enhancement goes against you on this, but in the post-Booker world that certainly would not prevent the trial judge from imposing the same sentence or perhaps even a harsher sentence based upon the fact that this was a large number of people who were not able to govern their own affairs. They essentially had a guardianship-type situation. So we're almost talking about angels dancing on the head of a pin, aren't we? I noticed the pin, and I don't say I'm an angel, but I would suggest that there is no challenge here to the reasonableness of the sentence, and we've made that argument in our brief, and I think – Well, but if I'm right about – To the substantive reason. If my interpretation of this carries the day on this panel, we have to remand for procedural unreasonableness, do we not? Because I think the precedent is clear. We have to have an accurately calculated guideline range before sentences impose. If the court concludes that the victim enhancement was not adequately established on the record that is before this court, I think the issue may be whether or not that can be established on remand, because I don't know whether or not there's any real clear showing that reimbursement occurred, actually, and when it did occur. I would argue that – But isn't that your burden to prove that, though? You want a two-point enhancement for that. You have to prove that up prior to sentencing. Well, I think that the fact that there had been no discussion of whether or not the victim was, in fact, the individual account holder at Ursuline or whether it was Ursuline, I'll readily admit that the record is not very extensive with regard to that. I think the government would have – if that was an issue, the government burden would have been to establish that each of those individuals was deprived of monies in their account for a significant period of time or for a period of time. Obviously, the Wall Street credit issue is somewhat reflective of the fact that if my account is low, I'm not going to be able to borrow or to pay on the basis of an account that is deficient. Now, how long it took to be reimbursed, I think, would be reflective of whether or not they are actually victims, because they're deprived of the opportunity to use their funds for whatever purposes they need it for. And if the defendant in this case deprived them of those funds for any period of time, they are a victim. That's not a given, though. The Fifth, the Sixth, and the Eighth Circuits have all said otherwise. I mean, in the Conner case, that was an eBay fraud. The victims were reimbursed by the credit card companies. The Fifth Circuit said they weren't victims because of the reimbursement. Yeager, the Sixth Circuit, said the banks reimbursed the folks, no victims. And Icaza, the Eighth Circuit, had 400 Walgreens robbed, 400 victims. I mean, in the colloquial, I think the man on the street would say when you rob 400 Walgreens, those 400 store managers were victimized by that, right? At least, commonsensically. I'm kind of curious that insurance is driving this issue. Well, there wasn't even insurance. There it's, hey, even though the 400 store managers had their lives upended, et cetera, et cetera, Walgreens is one corporation, ergo one victim. That's why I guess I'm suggesting that this might be an area where the two-point uptick or downtick for something like this isn't as important or shouldn't be as important to the sentencing judge as the magnitude of the crime or the particularized facts of the case. For example, in the Leake case, where you had people whose homes were foreclosed in the Second Circuit. I readily agree with the court that should this case be remanded, the same sentence could be imposed. And I would also reflect on the fact that the district court reduced the sentence, essentially, by the criminal history determination, which took three months off of the guideline range and sentenced at the low end of that adjusted guideline range. So the district court already has indicated somewhat a flexibility with regard to the guideline range based on the criminal history determination. You may have already answered this, but to follow up on both the question that Judge Fisher and Judge Hardeman asked, are you able to address the circuit split? I mean, we may have a decision here as to where we're going. Again, like Ms. Gerlach, I would rather address that in writing in a short period of time if possible, but I think the circuit split is something that is relevant to this court's determination on that particular issue. Circuit split may not, since they were my term, circuit split may not be the exact proper words, but at least in Abbey-Odom and Connor, the Fifth and Second Circuit reflected that with more proof as to the harm to the particular account holders, there could be the multiple victim enhancement. My concern here is, as Judge Hardeman has also noted, is that the record is nonexistent as to what happened between the period 2001 until the time of the indictment in 2006. We don't know whether or not these individual account holders had their accounts with money that had been taken for one day, one year, or five years. I agree that the record doesn't show that. I query whether or not, should there be a remand, whether the government would be able to come forward and, in light of the circuit split, establish what would meet the requirements of one or the other view with regard to this issue by establishing that these individuals were not reimbursed until after discovery of the fraud, which may have lasted, was undiscovered for some period of time. Once it was discovered, how long it took before their accounts were replenished so that they did have an adequate account to meet their needs. That, I readily admit, is not in this record at this point. Do you have anything else, Mr. Eberhardt? I think I've covered all the issues that have been raised by the appellant in her argument. I would only add that there have been some pro se filings. I did mention them to Ms. Burlock by Ms. Kennedy as recently as last week that were ruled upon by the district court with regard to a request to reduce the sentence or to convert it into a home detention sentence. Those were denied by the district court on procedural and somewhat substantive grounds because the court reflected again on its having considered Ms. Kennedy's family circumstances in an order that was filed on, I believe, September 26th. So the record has been somewhat enhanced on the issue of family circumstances as a result of some pro se filings by Ms. Kennedy. Thank you. Ms. Gerlach, do you have anything on rebuttal? Thank you, Your Honor. On appendix page 67 in defense counsel's objections to the PSR, he states, moreover, the accounts were all reimbursed by Ursuline Services and its insurance carrier and therefore Ursuline and the carrier are the true victims in this case. So it is a record that there was reimbursement. The government never refuted that. And as for the timeline, the record simply doesn't exist on that. But we must accept the record as it is and assume that these people were either never out of pocket or not out for any significant amount of time which affected them. If this matter went back to the district court, would they be able to supplement the record? It depends on the nature of the remand. And I think if this court remands it with the caveat that the record is unclear, vague, or incomplete and needs to be fleshed out, then I think that it would. If this court simply finds that Ursuline and the insurance carrier were the only victims, then I don't think that there would be any further factual development in the district court. I mean, the government shouldn't get a do-over on that. No, they should not. I mean, if they felt that there were a large number of victims and they could have adduced testimony from family members saying, you know, this ruined a week of my life because my mother's account was pilfered and I had to deal with it. They didn't bring any of that to the court, did they? Effectively, it would be punishing Ms. Kennedy for appealing because she appealed to say that her sentence was unfair and then to have it sent back so that the government can beef up the record and keep the sentence where it is or maybe even make it higher since, as Judge Fischer pointed out, or I think it was you, Judge Hardiman, excuse me, the sentence could go higher under a 3553A analysis. That would be penalizing her for appeal, and I think that there is a... Well, you run the risk in any case of that happening, don't you? Under the sentencing package doctrine where you're opening it up, I'd have to analyze that more thoroughly. I mean, one thing I took note of is even if we go your way on the two-point enhancement, the 18-month sentence imposed by the trial judge is still going to be, if he chooses to do that same sentence, it's still going to be a within-guideline sentence. It depends on how many of the enhancements are knocked out because... Just the two-point, just this one. Well, this is the issue, and this is something that I have a note to bring up on rebuttal. If this court goes our way on the two points for the number of victims, I think that reasoning has substantial application to the vulnerable victims enhancement as well because if this court finds that there are not 10 victims, then you are effectively saying the only victims are Ursuline and the insurance carrier, and Ursuline and the insurance carrier can no way meet the definition of vulnerable victim. So in that case, then we're down to four points and not just two. Well, I looked at that again this morning, and I'm not convinced that we have to apply or that we should apply the same definitional term in the disparate guidelines. I mean, they're in different sections of the manual. There has to be a nexus for vulnerable victim between the condition of the quote-unquote victim and the completion or success of the crime. I believe defense counsel made a very compelling argument. Victim doesn't necessarily have to be the same. Well, I made a compelling argument, which the defense counsel made in the trial court, that even if the account holders are victims, that there was no nexus between their condition and the success of the crime. I think that argument only gets stronger if those people are not the victims and Ursuline and the insurance company are the victims. So I do think that we at least have to look at it again if this court in any way rules. What if we find that the individuals are actually victims? Does your vulnerable victims argument hold water then? It does, and as I said in my brief, and I reiterated the arguments defense counsel made in the trial court, there was no nexus between the condition of these people and the success of the crime because Ms. Kennedy was not directly interacting with these people. She was only manipulating numbers, and there's a distinction. Certainly the condition of these people made them in a position that they had to avail themselves of Ursuline's services, but this crime could have been accomplished even if able-bodied, able-minded people were the account holders. So the condition of the account holders is not crucial to the success of the offense and its completion. Thank you, Ms. Gerlach. Thank you. We thank both counsel for excellent argument. We'll take the matter under advisement.